UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOMARCUS PORTER | CIVIL ACTION |
| VERSUS | NO. 22-4002 |
| BRIAN NICHOLAS, ET AL. | SECTION "A"(4) |

# REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and **42 U.S.C. § 1997e(c)(1) and(2)** as applicable.  On March 30, 2023, the Court held a hearing with plaintiff by telephone pursuant to *Spears v. McCotter*,[1] and its progeny.[2]  Upon review of the record, the Court finds this matter in part can be disposed of without further proceedings.

## I.    Factual and Procedural Background

Plaintiff Tomarcus Porter ("Porter") is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[3]  Porter filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants Lieutenant ("Lt.") Brian Nicholas, Master Sergeant ("Msgt.") Caleb LeMaire, Msgt. Dustin Luper, Lt. Colonel Wade Rigdon, and Colonel Donnie Seal, all correctional officers at RCC.[4]

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of a *Spears* Hearing is to ascertain the factual and legal basis of the prisoner's claims.  The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] ECF 8.  The plaintiff provided sworn testimony during the  recorded hearing.

[3] ECF No. 4, ¶III(A), at 4 (convicted 4/11/19); *id*., ¶III(4), at 7; ECF No. 4-2, ¶II(A), at 2; *id*., ¶III(A), at 4.

[4] ECF No. 4, ¶III(B)-(F), at 5; ECF No. 4-2, ¶III(B)-(C), at 4.  Although misspelled on the docket sheet, Porter clearly names Wade Rig**d**on as a defendant.

A.   **The Complaint**

Porter alleges that Lt. Nicholas, now deceased, sprayed him with a chemical agent and lied saying that he used the spray because plaintiff spit on him.[5]  Porter further claims that Major Rigdon also sprayed him while he was naked in the shower.  Porter also asserts that Colonel Seal fabricated a report that indicate that Msgts. LeMaire and Luper were the officers who sprayed plaintiff with chemical agents but they never sprayed him.  Porter claims that he exhausted the administrative grievance process through complaint RCC-2021-461 filed October 21, 2021.[6]

As relief, Porter seeks monetary relief, an immediate transfer to a mental institution for psychological recovery, and for defendants to pay court costs and attorney's fees.[7]

B.   ***Spears* Hearing**

1.   **Porter's Testimony**

Porter testified that during one incident, his cell door was opened to allow officers to enter his cell to take his mat and sheets because he was in isolation while housed in tier 4 right, cell 2.  Porter stated that he had been in isolation since he arrived at the jail on February 5.  Porter stated that while at the bars, he peeked around the corner into the next cell because he was frustrated by the offender next to him.  He stated that he was immediately pushed in the chest by a Sergeant back into the cell and pepper sprayed.  He stated that he was not given permission to leave his cell or peek around the corner but he did not know at the time that it was not allowed.

Porter further testified that defendant Major Rigdon sprayed him while he was naked in the shower.  At that time, Porter was still in isolation but now in tier 4 left, cell 13.  The officers were conducting a shakedown search of his cell looking for contraband.  He believes that the officers

---

[5] ECF No. 4, ¶IV, at 5; *see also* ECF No. 4-2, ¶IV, at 3-4.
[6] ECF No. 4, ¶II(A)-(C), at 2; ECF No. 4-2. ¶II(C)(1)-(2), at 2.
[7] ECF No. 4, ¶V, at 5; *see also* ECF No. 4-2, ¶V, at 4.

2

found pills. He claims that he also was put in the shower and told to handover an object they saw he had hidden between his testicles. The object contained several pills. Porter stated that he threw the object, which based on the report he had was a piece of black garbage bag to one of the officers, Austin Hughes, who retrieved it. Defendant Lt. Rigdon the advised him that he was going to spray Porter with pepper spray unless he came to the bars. Porter claims that he did not want to go to the bars because he was naked, and asked that the officer not spray him, but he was sprayed anyway. Porter stated that he was not allowed to clean off and was taken naked back to his cell. He further claims that, as a result of these incidents, he received at least four disciplinary charges and sentences. He recall that for one charge, he was given 24 hours cell restriction. For one, he was given $15 restitution and four weeks cell confinement. He recalled receiving ten days isolation for one charge and four weeks cell confinement and ten days isolation for another.

      Porter further indicated that he sued Col. Donny Seals as a defendant because he fabricated a disciplinary report by stating that Porter had been sprayed by defendants LeMaire and Luper, but that is not who sprayed him. He insisted that defendants Rigdon and Nicholas were the officers who sprayed him. He included LeMaire and Luper as defendants because they did not do anything when another inmate stole his deodorant. Porter stated that they did a brief search and did not find get the deodorant back for him.

      Porter also claims that he sued Lt. Nicholas because he falsified a disciplinary report stating that he sprayed Porter with chemical spray because Porter threatened to spit on him. Porter denied that he was going to spit on Nicholas.

      Porter acknowledged that he had disciplinary hearings for each of the events that led to his disciplinary sentences but he did not recall what he may have said or the evidence produced. He stated that he only has copies of the disciplinary reports and sentences imposed, which he would

provide to the Court. Porter also stated that he suffered no physical injury from the pepper spray incidents and was only complaining that he was not allowed to decontaminate himself after the spray was used.

As relief, Porter stated that he wanted an immediate transfer to another jail and to be placed in protective custody. He also requested an immediate transfer for treatment for the psychological damage caused by these events.

### 2.     Disciplinary Reports

In connection with his complaint and *Spears* testimony, Porter provided the Court with copies of five disciplinary reports involving a series of incidents that occurred on April 18, 2021 with disciplinary hearings held on April 19, 2021.[8]

The first report charged Porter with defiance and aggravated disobedience on April 18, 2021, at 4:54 a.m.[9] The report, written by Lt. Bryan Nichols indicates that he went to Porter's cell, Sleet 4R cell 2, to retrieve his sheets, blanket, and mattress because Porter was on isolation. Porter was ordered to come to the bars to be restrained, and he complied. His cell was opened for Lt. Nichols to enter and retrieve the linens. As he did, Porter exited the open cell door, looked around the half wall into inmate Gaige White's cell and threatened to spit in his face. Porter cleared his throat and before he could spit, Lt. Nichols placed his hand on Porter's chest and ordered him not to spit and to go back into the cell. Lt. Nichols then ordered Porter to face the back of his cell. He momentarily complied and then threatened to spit in Lt. Nichols face if he ever touched him again. Porter then cleared his throat, turned, and took a step towards Lt. Nichols. Lt. Nichols took this as a threat of assault and immediately administered a short burst of the chemical spray "Phantom" to

---

[8] ECF No. 17.
[9] *Id.*, ¶10, at 2.

Porter's face and head area. Porter then complied and the cell door was closed. Lt. Nichols ordered Msgts. LeMaire and Luper to place a "lexan" shield as a spit guard in front of Porter's cell. Lt. Nichols exited the tier to inform his supervisors. Porter was taken to the Sleet 4 lobby to be seen by a nurse. Porter declined a shower and clean clothes and cleaning supplies for his cell. Per Major Rigdon, Porter was placed on a 24 hour cell restriction for the lexan shield and spit net. Resolution of these charges is not indicated on the copy provided by Porter.

The second report, written by Msgt. LeMaire, charged Porter with defiance and aggravated disobedience on April 18, 2021, at 5:31 a.m.[10] Msgt. LeMaire and Msgt. Luper escorted Porter to his cell, Sleet 4R cell 2, after seeing a nurse for a post-use-of-force exam following the above incident. Once he was in his cell, Msgt. LeMaire ordered Porter to get on his knees and he momentarily complied. The cell door closed and Porter stood up. The cell door opened and Msgt. LeMaire again ordered Porter to get on his knees and he complied. The cell door shut and LeMaire proceeded to move the shackles from Porter's left foot. Porter cursed and told LeMaire to stop touching his feet and tried to move away to stand up. Msgt. LeMaire pulled the shackles towards himself and gave several orders for Porter to stop resisting, but he did not comply. Msgt. Luper assisted with maintaining control of the shackles. Porter did not stop resisting until Lt. Nichols responded and called for backup. They were able to remove the restraints without further incident. Porter, LeMaire, and Luper were examined by a nurse. Resolution of these charges is not indicated on the copy provided by Porter.

The third report, written by Msgt. Aaron Bennett, charged Porter with aggravated sex offenses – other prohibited sexual behavior on April 18, 2021, at 6:36 a.m.[11] At that time, inmate

---

[10] *Id.*, ¶10, at 3.
[11] *Id.*, ¶10, at 4.

Gaige White was placed on the tier while his cell, Sleet 4R cell 3, was being searched. During the search Msgt. Bennett heard Porter (in Sleet 4R, cell 2) tell inmate White, "look at this dick, I'm going to jack off on you every time you come out that cell."[12] Msgt. Bennett ordered Porter to cease his remarks, and he complied. After White was returned to his cell, the incident was reported to Lt. Tynes. The two officers reviewed the recorded video of the incident and noticed that while White was on tier, Porter was rubbing his penis through his boxers with his hand. Resolution of these charges is not indicated on the copy provided by Porter.

The fourth report charged Porter with contraband, defiance, and aggravated disobedience on April 18, 2021, at 2:25 p.m.[13] The report, written by Lt. Tynes, Msgt. Charles Griffith, and Msgt. Austin Hughes went to Porter's cell, Sleet 4L cell 13, to conduct a search. The officers saw Porter removed something from his bed and turn to the back of the cell. Lt. Nichols ordered Porter to put on his spit net and move to the bars to be restrained. Porter was escorted out of the cell and cleared with a medical detector. Porter was placed on his knees during the search. Lt. Nichols saw Porter moving his hands as he was putting something inside of his pants. He ordered Msgt. Hughes to take Porter to Sleet 4L shower and conduct a search of his person. After Porter removed his clothes, Lt. Nichols saw a black plastic object inside Porter's inner thigh near his testicles. He ordered Porter several times to hand him the object, and Porter refused, cursed, and told the officers to come get it. Lt. Nichols ordered Porter to come to the bars to be restrained, and he again refused. Major Wade Rigdon was notified and went to the tier. At that time, Porter surrendered the object, which was a black trash bag that contained sugar packets filled with 9 pills. Two pills were Keppra

---

[12] *Id.*
[13] *Id.*, ¶10, at 5.

500 mg, which plaintiff was prescribed, and seven pills were Flexeril 10mg which he was not prescribed.  Resolution of these charges is not indicated on the copy provided by Porter.

The fifth and final report also charged Porter with defiance and aggravated disobedience on April 18, 2021, at 2:43 p.m.[14]  In this report, Major Rigdon writes that he responded to Sleet 4L when Porter was refusing to comply with Lt. Tynes's commands during the earlier search of his person in the shower.  He notes that, after Porter threw the small piece of black trash bag on the floor, it was picked up by Msgt. Hughes.  Major Rigdon then gave Porter a direct order to come to the bars to be restrained, and he refused.  After confirming with the medical personnel that chemical agents could be used on Porter, he turned on his body camera and obtained chemical agent from Lt. Tynes.  Major Rigdon indicated that he gave Porter two direct orders to come to the bars to be restrained or chemical agent would be used if he did not comply.  Porter refused the order and remained covered by a shower curtain.  Major Rigdon applied two short bursts of the chemical agent "Phantom" into the cell and onto the shower curtain.  He left the tier to allow the spray to take effect.  Lt. Tynes then entered the tier and Porter complied with orders to be restrained by Lt. Tynes and Msgt. Hughes.  Porter was escorted to the lobby to be seen by a nurse.  Porter refused to shower and refused clean clothing.  He was escorted back to his cell without further incident.  Resolution of these charges is not indicated on the copy provided by Porter.

## II.     Standards of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other*

---

[14] *Id.*, ¶10, at 6.

*grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.   Analysis

#### A.   Lost Personal Deodorant

Porter claims that he named Msgt. LeMaire and Msgt. Luper as defendants because they were unable to recover his personal deodorant that he contended was taken by another inmate from the box where his personal property was kept while he was in isolation. He indicated that the officers searched the inmate's cell but failed to return his property or do anything about it

The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981),

*overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  "[N]o constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct."  *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533; *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 F. App'x 731 (5th Cir. 2011).  An adequate post-deprivation remedy exists when an inmate can file a tort suit in state court for compensation for or recovery of his property, a remedy which is available in Louisiana.  *Hernandez v. Egwe*, 840 F. App'x 797, 798 (5th Cir. 2021) (citing *Sheppard v. La. Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989)).

Porter's claims that the officers allowed his deodorant to be taken by another inmate does not rise to the level of a constitutional violation.  Even if the officers inadvertently or intentionally allowed the other inmate to take the deodorant, an adequate state post-deprivation remedy exists under Louisiana law.  The loss of property, or the taking of his deodorant by another inmate, also would be appropriately a tort claim in state court.

Porter's § 1983 claims against Msgt. LeMaire and Msgt. Luper must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

**B.     False Disciplinary Reports**

Porter claims that Lt. Nicholas (identified in the disciplinary reports as Lt. Bryan Nichols) falsified a disciplinary report by claiming that Porter threatened to spit on him.  This appears to refer to the report written by Lt Bryan Nichols at 4:54 a.m. (ECF No. 17, at 2).  He also claims that Col. Seals falsified another disciplinary report to claim that Porter had been pepper sprayed by

defendants Msgt. LeMaire and Msgt. Luper instead of Major Rigdon and Lt. Nicholas (or Nichols). Porter did not provide the Court with a report written by Col. Seals or a report that indicated he was pepper sprayed by LeMaire and Luper. In addition, Lt. Nichols's report does not claim that Porter spit on the officer, only that his actions were perceived as a threat that Porter would spit.

Nevertheless, an inmate's allegation that a prison official asserted false disciplinary charges against him fails to state a claim under § 1983 when the prisoner is afforded due process protection through a subsequent hearing. *Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012) (quoting *Collins v. King*, 743 F.2d 248, 253–54 (5th Cir. 1984)); *accord Doolittle v. Holmes*, 306 F. App'x 133, 134 (5th Cir. 2009); *Moore v. Butler*, 211 F.3d 593, 2000 WL 329165, at *1 (5th Cir. Mar. 17, 2000). Porter testified that he was provided hearings on each of his disciplinary write-ups after which he received the administrative sentences reported previously, including cell restrictions and brief lockdown periods. The due process clause does not require more than this unless the inmate faces "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). Here, Porter did not face any atypical discipline and instead, as he testified, served his disciplinary sentence in the same cell and under only limited restrictions attendant to his isolation status. For these reasons, he has not stated a non-frivolous due process claim in his complaint.

Porter's § 1983 claims against Lt. Nicholas (or Nichols) and Col. Seal must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

C. **Excessive Force**

Porter also challenges two incidents of alleged excessive force against defendants Lt. Nicholas and Major Rigdon. Porter claims that Lt. Nicholas pushed him back by the chest back into his cell and used pepper spray on him, alleging that he believed Porter was going to spit on him. He also claims that, in a different incident, Major Rigdon unnecessarily pepper sprayed him while he was naked in the shower. In both incidents Porter admits that he was engaged in activities in violation of the jails disciplinary rules, all of which is confirmed by the disciplinary reports he provided after the *Spears* hearing.

Claims of excessive force used to subdue a convicted prisoner are analyzed under an Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312 (1986). It is clearly established law that prison staff cannot cause the unnecessary and wanton infliction of pain. *Id*. at 320. In evaluating an Eighth Amendment claim of alleged use of excessive force by a prison official upon a convicted inmate, the Supreme Court has instructed that "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992); *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013).

The Eighth Amendment inquiry has two components: (1) an objective inquiry that asks whether the alleged wrongdoing was nontrivial and harmful enough to violate the constitution; and (2) a subjective inquiry as to the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 8. Under the objective component, the prisoner must demonstrate that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id*. To prevail on such a claim, a plaintiff must first prove a subjective component by establishing that "the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain.'" *Mosley v. White*,

11

464 F. App'x 206, 211-12 (5th Cir. 2010) (quoting *Hudson*, 503 U.S. at 8). To make this determination, a court should consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered;. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998); *Hudson v. McMillan*, 962 F.2d 522, 523 (5th Cir. 1992). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Under the injury component, a claim for excessive force is actionable only if the plaintiff demonstrates an injury resulting directly and only from the application of force. Although the plaintiff is not required to show a "significant injury," he is required to show that he has suffered "'at least some form of injury.' The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). However, while "a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). Thus, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id*. (citation and quotation marks omitted). "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from

12

an officer's unreasonably excessive force." *Id*. (quoting *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996).

Furthermore, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . ." 42 U.S.C. § 1997e(e); *see also Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997) (holding that a sore and bruised ear lasting for three days was *de minimis* and did not meet the physical injury requirement found in the Prison Litigation Reform Act). In order to state an Eighth Amendment claim, a prisoner must have "suffered at least some injury." *See, e.g., Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (unpublished) (affirming the dismissal of a prisoner's excessive force claim, holding the prisoner's split lip was a *de minimis* injury and the conduct was not repugnant to the conscience of mankind).

### 1. Incident with Lt. Nicholas

Porter testified that Lt. Nicholas (or Nichols) opened his cell door to enter to retrieve the bedding per isolation protocol. When the Lieutenant entered, he left his cell without authorization to peak into the next cell because he was annoyed by the inmate in the cell next to him. According to Lt. Nichols's report, which Porter provided, Porter not only left his cell to look in the other cell, he threatened to spit on the other inmate.[15] The Lieutenant put his hand on Porter's chest to move him back into the cell. Porter then threatened to spit on Lt. Nichols, and took a step towards him after clearing his throat as if to spit. Although he did not spit, Lt. Nichols perceived his actions as a threat of assault and sprayed one burst of pepper spray. Porter reportedly declined a shower and clean clothes. Porter testified that he suffered no physical injury.

---

[15] ECF No 17, at 2.

Porters own statements allege that the use of force was in response to his disciplinary infractions. Porters also acknowledges that that he was sentenced for his defiant actions after a disciplinary hearing. Even though he did not actually spit on Lt. Nicholson (or Nichols), his reaction was perceived by the officer as a threat. Porter's allegations and testimony do not suggest that Lt. Nicholas (or Nichols) used force solely and maliciously to cause him harm.

The same is true of the alleged touching or push on Porter's chest. As Porter concedes, the Lieutenant used the force necessary to return Porter to his cell. It also is significant that Porter denies that the push or the pepper spray caused him any injury. Under the factors set forth above, the use of the push to return him to his cell and use of the chemical agent deployed to curtail identified misbehavior by an inmate and which resulted in no injury is at best *de minimis* force and not a constitutional violation cognizable under § 1983.

Thus, Porter has failed to allege a non-frivolous claim of excessive force against Lt. Nicholson (or Nichols). Porter's § 1983 claims against Lt. Nicholas must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

### 2. Incident with Major Rigdon

Porter alleges that Major Rigdon pepper sprayed while he was naked in the shower. As he testified, however, he was in the shower to wait while his cell was searched for contraband. The officers found drugs in the cell. The officers also determined that Porter was secreting drugs in a plastic wrapper in his groin area. After Porter handed the packet of drugs over, he admittedly then refused Major Rigdon's commands to walk to the bars to be escorted back. Porter testified that he did not want to go to the bars because he was naked. He also admittedly was warned by Major

Rigdon that if he did not get up and go to the bars, he would be sprayed with pepper spray. When he continued to refuse the commands, the Major sprayed him, or the shower curtain shielding him.

Porter's own statements and testimony confirm that he was sprayed after he continually failed to obey the officer's commands. Porter's allegations and testimony do not indicate that Major Rigdon used force solely and maliciously to cause him harm. Instead, the brief blast of spray was used to in response to Porter's defiance and failure to obey the orders to come to the bars.

Porter also denies that the pepper spray in the shower caused him any injury. Thus, based on the relevant factors above, the use of the chemical spray that resulted in no injury was *de minimis* and not a constitutional violation cognizable under § 1983.

Thus, Porter has failed to allege a non-frivolous claim of excessive force against Major Rigdon. Porter's § 1983 claims against Major Rigdon should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

### IV.  Recommendation

It is therefore **RECOMMENDED** that Tomarcus Porter's § 1983 claims against defendants Lieutenant Brian Nicholas, Master Sergeant Caleb LeMaire, Master Sergeant Dustin Luper, Lieutenant Colonel Wade Rigdon, and Colonel Donnie Seal be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[16]

        New Orleans, Louisiana, this 23rd day of June, 2023.

        **KAREN WELLS ROBY**
        **UNITED STATES MAGISTRATE JUDGE**

---

[16] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.